CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

SYDNEY SPECTOR #11232
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
Email: Sydney.Spector@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALOHA AINA BBQ, AND ERIK CERECERES, individually,<br><br>Defendants. | Civil No. 24-00039<br><br>COMPLAINT<br>(Jury Trial Demanded) |

## COMPLAINT

This is an action by the United States of America against Defendants

ALOHA AINA BBQ ("Aloha Aina") and ERIK CERECERES, individually

("Defendant Cereceres," and with Aloha Aina, "Defendants"), to recover treble

damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C.

§§ 3729-33, civil penalties under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), partially codified at 12 U.S.C. § 1833a, and to recover money for common law or equitable causes of action for unjust enrichment based upon Defendants' receipt of Paycheck Protection Program ("PPP") and COVID-19 Economic Injury and Disaster Loan Emergency Advance ("EIDL Emergency Advance") and EIDL funds to which they were not entitled.

## JURISDICTION AND VENUE

1.  This action arises under the FCA, FIRREA, and the common law.

2.  The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 because the United States is the plaintiff. The Court also has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a).

3.  The Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because Defendants can be found, reside, or transact business in this District, or have committed the alleged acts in this District.

4.  Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) as Defendants can be found in this District and/or the subject transactions took place in this District.

## PARTIES

5.  Plaintiff, United States of America, guarantees and funds certain loans through the Small Business Administration ("SBA").

6. Defendant Erik Cereceres is a resident of Maui County, Hawaii, and is the 100% owner of Aloha Aina.

7. Defendant Aloha Aina is a resident of Maui County, Hawaii.

## THE PAYCHECK PROTECTION PROGRAM

8. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

9. To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small

business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

10. A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

11. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

12. The application process to obtain a PPP loan required the eligible recipient to make the following good faith certifications and acknowledgments:

    a. That the applicant was eligible to receive a PPP loan under the rules in effect at the time the application was submitted (the "PPP Rules");

b. That the uncertainty of current economic conditions made the loan request necessary to support the ongoing operations of the eligible recipient;

c. That the applicant was in operation on February 15, 2020, had not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC;

d. That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, or other covered costs under the PPP Rules;

e. That if the funds were knowingly used for unauthorized purposes, the federal government may find the individual legally liable for such charges as fraud;

f. That not more than 40 percent of the loan proceeds may be used for non-payroll costs;

g. That documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered

    rent payments, and covered utilities would be provided to the lender if required;

h. That the eligible recipient had not received and would not receive another loan under the PPP;

i. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects;

j. That the applicant understood that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. §§ 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000.00; under 15 U.S.C. § 645 by imprisonment of not more than two years and/or a fine of not more than $5,000.00; and, if submitted to a federally insured institution, under 18 U.S.C. § 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.00; and

k. That the lender would confirm the eligible loan amount using the documents submitted by the applicant.

## EIDL LOANS AND EMERGENCY ADVANCES

13. The CARES Act also established the SBA's COVID-19 Economic Injury and Disaster Loan ("COVID-19 EIDL") program.

14. Under the COVID-19 EIDL program, the SBA offered two types of funding. The first type, COVID-19 EIDL loans, were low-interest, fixed-rate, long-term loans intended to meet operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time. The second type, EIDL Emergency Advances, were funds that could be awarded to COVID-19 EIDL loan applicants that were meant to serve as an "advance" on the applicant's COVID-19 EIDL loan. The EIDL Emergency Advances were intended to provide immediate relief to small businesses experiencing a temporary loss of revenue.

15. To receive an EIDL Emergency Advance, the COVID-19 EIDL loan applicant did not need to accept the loan or be approved for the loan; the applicant needed only to have an existing COVID-19 EIDL loan application. In 2020, the EIDL Emergency Advance was limited at $1,000 per employee up to a maximum of $10,000 per business. The SBA did not require the EIDL Emergency Advances to be repaid to the SBA, even if the underlying COVID-19 EIDL loan application was subsequently denied.

16. Unlike PPP loans, EIDL Emergency Advances were submitted directly to, and processed by, the SBA.

17. In advance of distributing the EIDL Emergency Advance and EIDL loan, the SBA required the borrower to file a certification, under penalty of perjury, that they were eligible to apply for a COVID-19 EIDL loan.

## THE FALSE CLAIMS ACT

18. The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

19. FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $13,508 to a maximum of $27,018. 28 C.F.R. § 85.5.

20. For purposes of the FCA, the terms "knowing" and "knowingly"

    (A)   mean that a person, with respect to information—

        (i)   has actual knowledge of the information;

        (ii)  acts in deliberate ignorance of the truth or falsity of the

      information; or

    (iii) acts in reckless disregard of the truth or falsity of the information; and

  (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

21. Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. *Id*. § 3729(b)(2)(A).

22. The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. *Id*. § 3729(b)(4).

## FIRREA

23. Section 951 of FIRREA, as amended, codified at 12 U.S.C. §1833a, provides that the Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified violations as established by a preponderance of the evidence. 28 C.F.R. § 85.5 (the maximum civil penalty was increased to $2,372,677 for assessments after January 30, 2023 for which violations occurred after November 2, 2015). The statute further provides that the Attorney General alternatively may recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or the loss. *Id*.

The predicate violations identified in Section 951 that can form the basis for liability under FIRREA include, among others: (a) knowingly or willfully making a materially false or fraudulent statement on a loan application to a federally insured financially institution (18 U.S.C. § 1001); (b) making a false statement on a loan application to a financial institution, "the accounts of which are insured by the Federal Deposit Insurance Corporation" (18 U.S.C. § 1014); and (c) knowingly making a false statement for the purpose of influencing a decision by the Administrator of the SBA or to obtain a loan, money, or anything of value under the SBA's 7(a) program, including the PPP (15 U.S.C. § 645(a)).

24. Section 1109(i) of the CARES Act provides that PPP loans are SBA loans for the purposes of 15 U.S.C. § 645.

## ALLEGATIONS

25. It is a violation of the FCA to knowingly obtain an SBA-guaranteed PPP loan which is not supplied in compliance with the PPP Rules, and to subsequently obtain forgiveness of such loan. Defendant Cereceres was individually, and through Aloha Aina, involved in obtaining two PPP loans and subsequently involved in obtaining forgiveness of the subject loans, in violation of the FCA.

26. Defendants applied for and received an SBA-guaranteed first-draw PPP loan in the amount of $31,056.00, which was approved on or about April 30,

2020 (the "First-Draw Loan"), based upon misrepresentations in a loan application submitted to a financial institution ("Bank 1").[1]  In the PPP loan application, Aloha Aina, by and through its sole owner, Defendant Cereceres, knowingly misrepresented its eligible payroll costs, which were used in calculating the loan amount for which Defendants were eligible.  The application represents that Aloha Aina has average monthly payroll costs of at least $12,423, and certifies that there were two employees for whom Aloha Aina paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-Misc.  However, Aloha Aina did not pay any payroll taxes or otherwise report independent contractors on Form(s) 1099-Misc for the relevant time period.  These misrepresentations caused Defendants to receive loan proceeds well in excess of what they would be entitled, if any at all.

27.   Defendants applied for forgiveness of the First-Draw, and the loan was forgiven in its entirety, including interest, in the total amount of $31,388.99, on or about May 28, 2021.  In his application for forgiveness, Defendants knowingly misrepresented that they had complied with all the requirements of the PPP, including that Aloha Aina had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-Misc.

---

[1] The PPP loan was assigned number 7922067304.

28. Defendants applied for and received an SBA-guaranteed second-draw PPP loan in the amount of $29,166, which was approved on or about March 20, 2021 (the "Second-Draw Loan"), based upon misrepresentations in a loan application submitted to Bank 1.[2] In the PPP loan application, Aloha Aina, by and through its sole owner, Defendant Cereceres, misrepresented its annual income, which was used in calculating the maximum loan amount for which Defendants were eligible. In the application, Defendants represented that Aloha Aina had a gross annual income of $168,931 for 2019. In support Defendants provided a Form 1040, Schedule C purporting to show such income. That Form was never filed with the IRS. Moreover, Aloha Aina had an income of far less than $168,931 for 2019. This misrepresentation caused Defendants to receive loan proceeds well in excess of what they would entitled, if any at all.

29. Defendant applied for forgiveness of the Second-Draw, and the loan was forgiven in its entirety, including interest, in the total amount of $29,433.36, on or about February 18, 2022. In his application for forgiveness, Defendant knowingly misrepresented that he had complied with all the requirements of the PPP.

30. The SBA paid $5,000.00 in processing fees to Bank 1 in connection with the PPP loans disbursed to Defendants.

---

[2] The PPP loan was assigned number 5647698601.

31. Defendant Aloha Aina, through Defendant Cereceres, applied for an EIDL loan on or about March 30, 2020. In his application, Cereceres represented that Aloha Aina had a gross income of $200,000, and that he had 2 employees. Based on the representation of having 2 employees, Defendants received an EIDL Emergency Advance of $2,000, which was disbursed on or about April 20, 2020. In fact, Defendants had no qualifying employees. Additionally, on or about November 27, 2020, Defendants received an EIDL loan in the amount of $73,000. The loan was calculated based, in part, on Cereceres' false representation that he had a gross income of $200,000 for 2019. Such a representation was false because Defendants' gross income was far below that amount.

32. On or about April 12, 2023, a Special Agent with the Treasury Inspector General for Tax Administration and an Investigator with the United States Attorney's Office interviewed Defendant Cereceres. In sum and substance, Defendant Cereceres admitted the following:

    a. As to the First-Draw Loan, Defendants did not earn the requisite income during the covered period that would yield the amount of the loan received. Defendants' receipt of $31,388.99 in connection with the first PPP loan was based on the false representation that Aloha Aina had eligible payroll expenses of

      $12,423 for the twelve months preceding the loan. In fact, Aloha Aina BBQ did not have any eligible payroll expenses.

  b. As to the Second-Draw Loan, Defendants did not earn the requisite income during the covered period that would yield the amount of the loan received. Defendants' receipt of $29,166 in connection with the second PPP loan was based on the false representation that Aloha Aina had eligible gross income of $168,931 for the twelve months preceding the loan.

  c. Defendant Cereceres knew the information on the loan applications and the resulting loan amounts were false.

33. False statements and documents were submitted to Bank 1 which misrepresented the amount of eligible payroll and income for Defendants. These false statements in the loan applications and forgiveness applications were material to the payment of money by Bank 1 that was then reimbursed by the SBA, causing damages to the United States.

34. Additionally, false statements and documents submitted to the SBA were material to Defendants' receipt of the $2,000 EIDL Emergency Advance and $73,000 EIDL loan.

The United States realleges and incorporates all paragraphs above of this Complaint as fully set forth herein in all Counts listed below:

# COUNT I
## False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
## Presenting or Causing False Claims to Be Presented for Payment

35. Defendant Cereceres, individually and on behalf of Aloha Aina, knowingly requested and obtained two PPP loans for an amount they were not entitled to, in violation of the PPP Rules.

36. Defendant Cereceres, individually and on behalf of Aloha Aina, knowingly requested and received forgiveness of the PPP loans, despite their failure to comply with the PPP Rules.

37. By virtue of these false claims, the United States was damaged for the full amount of the PPP loans and the processing fees paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

38. Defendants knowingly requested and obtained an EIDL Emergency Advance and EIDL loan for an amount they were not entitled to, in violation of the SBA's rules regarding EIDL Emergency Advance and EIDL loan funds.

39. By virtue of these false claims, the United States was damaged for the full amount of the EIDL Emergency Advance and EIDL loan, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT II
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Making or Using False Records or Statements

40. Defendant Cereceres, individually and on behalf of Aloha Aina, knowingly submitted PPP loan applications that contained misrepresentations regarding their payroll costs.

41. Defendant Cereceres, individually and on behalf of Aloha Aina, subsequently knowingly submitted PPP forgiveness applications that misrepresented their eligibility for loan forgiveness.

42. By virtue of these false statements, the United States was damaged for the full amount of the loans and the processing fees paid to Bank 1, plus any other costs or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

43. Defendants knowingly submitted an EIDL Emergency Advance and EIDL loan application that contained misrepresentations regarding the number of individuals they employed and their gross income, and received amounts they were not entitled to, in violation of the SBA's rules regarding EIDL Emergency Advance funds and EIDL loans.

44. By virtue of these false claims, the United States was damaged for the full amount of the EIDL Emergency Advance and EIDL loan, plus any other costs

or interest, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT III
## False Statements to the SBA
## 12 U.S.C. § 1833a (FIRREA)

45.     This is a claim for civil penalties under FIRREA, 12 U.S.C. §1833a, as amended.

46.     Defendants, for the purposes of fraudulently obtaining two federally guaranteed PPP loans and inducing the SBA to forgive the loans, in violation of 12 U.S.C. §1833a, unlawfully, willfully and knowingly made false statements or certifications to SBA Lenders and the SBA in violation of 15 U.S.C. §645(a).

47.     Defendants signed the PPP loan agreements, thereby knowingly falsely representing that they would "comply with all SBA guidance" as it applied to the PPP loans.  These false statements were knowingly false and made for the purpose of influencing the SBA to obtain PPP loan proceeds in violation of 15 U.S.C. § 645(a).

48.     Because of Defendants' acts, they are liable for civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a(b).

## COUNT IV
## Unjust Enrichment

49.     This is a claim for the recovery of monies by which Defendant Cereceres, individually and on behalf of Aloha Aina, has been unjustly enriched.

50. By obtaining from the United States, through Bank 1, funds to which they were not entitled, Defendant Cereceres, individually and on behalf of Aloha Aina, was unjustly enriched and the United States is entitled to damages in an amount of $60,222.35 in PPP funds plus loan processing fees, plus interest, the $2,000 EIDL Emergency Advance, and the $73,000 EIDL Loan, together with any other damages to be determined at trial.

## COUNT IV
### Payment by Mistake

51. This is a claim for the recovery of monies the United States paid directly or indirectly to Defendant Cereceres, individually and on behalf of Aloha Aina, as a result of mistaken understandings of fact.

52. The United States' mistaken understandings of fact were material to its decision to approve and then forgive the PPP loans provided to Defendant Cereceres, individually and on behalf of Aloha Aina, as well as the EIDL Emergency Advance and the EIDL loan. The United States acted in reasonable reliance on the truthfulness of the statements contained in the PPP loan applications, the PPP forgiveness applications, and the application for the COVID-19 EIDL program.

53. Thus, the United States is entitled to damages in the amount of the PPP loans, the EIDL Advance, and the EIDL loan, plus any other amounts to be determined at trial.

## PRAYER FOR RELIEF AND JURY DEMAND

The United States requests that the Court enter judgment against Defendants and grant the following relief:

(a) On Counts I and II (False Claims Act), awarding the United States treble the damages it sustained for the $60,822.35 forgiven (the loan amounts plus interest at the time of forgiveness) plus the $5,000 in processing fees for the two PPP loans paid by the United States to Bank 1, as well as the EIDL Emergency Advance and EIDL loan, together with the maximum civil penalties allowed by law;

(b) On Count III (FIRREA), awarding the United States civil penalties pursuant to 12 U.S.C. § 1833a equal to, at minimum, the total forgiveness amount of the two PPP loans -- $60,822.35;

(c) On Count IV (Unjust Enrichment), awarding the United States the amount by which Defendant Cereceres, individually and on behalf of Aloha Aina, was unjustly enriched;

  (d) On Count IV (Payment by Mistake), awarding the United States the amount mistakenly paid to Defendant Cereceres, individually and on behalf of Aloha Aina;

  (e) awarding the United States pre- and post-judgment interest, costs, and filing fees; and

  (f) granting such other relief as the Court may deem just and proper.

The United States further demands a trial by jury of all issues so triable pursuant to Fed. Rule Civ. P. 38.

  Respectfully submitted this 30th day of January 2024.

        CLARE E. CONNORS
        United States Attorney
        District of Hawaii

         /s/ Sydney Spector
        By_____
         SYDNEY SPECTOR
         Assistant U.S. Attorney

        Attorneys for Plaintiff
        UNITED STATES OF AMERICA